**William E. GILLIAM, Appellee,**

v.

**ARMTEX, INC., Appellant.**

**William E. GILLIAM, Appellant,**

v.

**ARMTEX, INC., Appellee.**

**Nos. 86–1537, 86–1539.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1986.

Decided June 25, 1987.

J.W. Alexander, Jr. (John C. Miller, Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for Armtex, Inc.

George R. Hodges, Charlotte, N.C. (Richard C. Gaskins, Jr., Moore, Van Allen, Allen & Thigpen, on brief), for William E. Gilliam.

Before HALL, Circuit Judge, HAYNSWORTH, Senior Circuit Judge,

and CLARKE, United States District Judge for the Eastern District of Virginia, sitting by designation.

HAYNSWORTH, Senior Circuit Judge:

A jury found that the plaintiff's employment was terminated by the defendant in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621–34 (1985) and that the violation was "willful." The district court granted the defendant's motion for judgment notwithstanding the verdict as to the finding of willfulness but denied the motion insofar as it sought to overturn the basic finding of a violation of the statute. Each party has appealed the district court's disposition of the motion for judgment notwithstanding the verdict.

We agree with the district court's disposition of the motion and affirm.

### I.

Armtex manufactures apparel and nonapparel textile products. Its nonapparel fabrics are used in automobiles, furniture, scuba diving equipment and other products. At the time of the termination of his employment in 1982, Gilliam had been a salesman of Armtex's nonapparel fabrics for 23 years.

In 1972 Armtex had approximately 100 employees engaged in the manufacture of nonapparel fabrics, and the sales of those fabrics amounted to $5,941,000. There then began a long decline in the production and sale of nonapparel fabrics. By 1982, sales of those fabrics by Armtex amounted to only $972,000, and the number of Armtex's employees engaged in the production of such fabrics had declined to eight.

In late June 1982, when Gilliam was 65 years old, Armtex terminated his employment. His work, consisting primarily of servicing several large accounts, was transferred to a salesman of apparel fabrics. That salesman, then 34 years old, took on the sale of the nonapparel fabrics as an additional duty with no increase in compensation. For the next 18 months, he spent "20 percent or less" of his time servicing the nonapparel fabrics accounts.

In 1984, however, Armtex assigned the salesman to the sale of nonapparel fabrics on a full-time basis. That salesman left Armtex several months later and was succeeded by a 30–year old who continued to devote all of his time to the sale of nonapparel fabrics.

Nonapparel sales in 1984 totaled approximately $1,000,000, not much more than the 1982 sales when Gilliam was terminated.

The jury found that Armtex had terminated Gilliam because of his age. It awarded him $50,590 in compensatory damages. It also found that the defendant's violation of ADEA was willful, invoking the statutory provision for double damages. As indicated at the outset, the district court granted the defendant's motion for judgment notwithstanding the verdict as to the willfulness finding, but entered judgment on the verdict on the finding of the basic violation of the statute. The plaintiff then moved for an award of attorneys' fees and costs, and it was granted in the amount of $12,161.71.

### II.

Since there is no question but that the plaintiff was within the protected age group and that he suffered from an adverse employment action, the only question is whether the evidence, construed most favorably for the plaintiff, provides support for the jury's finding that he would not have suffered the adverse employment action but for the defendant's motive to discriminate on the basis of age. *See Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1432–33 (4th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980). We are not here concerned with methods of proof. *Barber v. American Airlines, Inc.*, 791 F.2d 658, 660 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986); *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d 253, 257 (3d Cir.1986). *But see EEOC v. University of Oklahoma*, 774 F.2d 999, 1002, 1004–05 (10th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1637,

90 L.Ed.2d 183 (1986). Our sole task is to determine whether, on the basis of the evidence presented, the jury might reasonably have made the findings that it did.

### III.

Armtex presented a business justification defense. Gilliam was not on a commission basis. He was on a relatively high fixed salary. As the volume of sales of nonapparel fabrics declined, revenues from the sale of such fabrics declined to the point that they no longer covered the cost of production, including Gilliam's fixed salary.

In late 1981 or early 1982, Armtex offered the plaintiff a sales liaison position in Chicago. Gilliam declined the offer because he did not wish to leave his home in North Carolina.

The company offered substantial evidence that Gilliam, with his high salary, was continued long after economic considerations dictated his termination. He was a long time employee and a personal friend of Edward Armfield, the company's Chairman of the Board. Indeed, at one point on cross-examination, Gilliam, himself, testified that he had been terminated because of the low volume of sales.

■ On that basis, the jury might well have found that the defendant's business justification defense was . established. While the plaintiff's evidence was thin, we agree with the district court, however, that it was sufficient to support the jury's finding of a violation of the statute.

Immediately after Gilliam's discharge, a young apparel salesman took on the sale of nonapparel fabrics as an additional duty, with no increase in his compensation. Within eighteen months after Gilliam's discharge, however, that salesman was put on nonapparel sales on a full-time basis. The volume of nonapparel fabric sales at that time was substantially the same as in the final year of Gilliam's employment. When that salesman left Armtex, the company employed another young salesman for full-time work in the sale of nonapparel fabrics.

The salary of each of the younger salesmen was substantially less than the salary which Gilliam had commanded. That fact might provide a plausible reason for redeployment of a full-time salesman in the nonapparel fabric market, but the jury could have drawn a negative inference and concluded that there was a continuing need for a full-time salesman of nonapparel fabrics.

Armtex had offered Gilliam a liaison position in Chicago. Gilliam turned it down because he preferred to live in North Carolina. Apparently, however, it was unexplained to him that it was not just a matter of his preference, since his continued employment as a full-time salesman of nonapparel fabrics was in jeopardy. Nor, apparently, was he ever given an opportunity of continued employment at a substantially reduced salary.

Moreover, there were contradictions and inconsistencies in the evidence presented by the defendant. In contradiction of the testimony that plaintiff's sales position was eliminated because of a depressed market for nonapparel fabrics, Edward Armfield, Jr., Executive Vice President for Sales, testified that plaintiff had not been discharged at all but had taken voluntary retirement. There were other inconsistencies as well, warranting emphasis upon the rule that it is for the jury to resolve questions of credibility and to decide whom and what to believe.

Viewing the evidence in the light most favorable to the plaintiff, we conclude that the district judge properly denied the motion for judgment notwithstanding the verdict with respect to the basic finding of a violation of the statute.

### IV.

■ Nevertheless, we affirm the grant of judgment notwithstanding the verdict as to the finding of willfulness.

The Congress provided in 29 U.S.C.A. § 626(b) for an enhancement of damages if a violation of the ADEA is found to be "willful." See 29 U.S.C.A. § 626(b) (1985) (incorporating 29 U.S.C.A. § 216(b) (West Supp.1987)). The statute, however, con-

tains no definition of the term. The omission has led to contentions, such as that advanced substantially by the plaintiff here, that a finding of willfulness is appropriate if the employer knows that there is such a thing as the ADEA protecting older employees and takes an adverse employment action with respect to an older employee because of his age. This is not enough to support the willfulness finding, however.

That was the holding of the Supreme Court in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). In that case, the airline had adopted a policy that permitted captains displaced for reasons other than age to "bump" less senior flight engineers. That right, however, extended only to captains 60 years old or less; older captains were given no such right. The Supreme Court held that the policy's exclusion of older captains was a violation of the ADEA, but that a finding of willfulness was not supported. The airline had consulted counsel as it was fashioning the policy. Although the Court concluded that the policy was defective, the Court set aside the finding that the airline knew that its policy was prohibited by the ADEA or that it acted in reckless disregard of the statutory prohibitions. The Court pointed out that if the enhanced damages provision could be rested upon a finding that the employer knew of the general prohibitions of the ADEA such damages would be imposed in virtually every case. This would clearly contravene the intention of Congress to provide a "two-tiered liability scheme." *Id.* at 128, 105 S.Ct. at 625. Liquidated damages flowing from a willful violation were designed to be punitive; where an employer acts reasonably and in good faith, such damages are not warranted. *Id.* at 125, 128 n. 22, 105 S.Ct. at 623, 625 n. 22; *see also Blue Bell,* 773 F.2d at 1435.

In *Dreyer v. Arco Chemical Co.,* 801 F.2d 651 (3d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), the court held that an adverse employment action against an individual employee cannot be held to be a willful viola-tion of the ADEA unless the employer's conduct was outrageous. Indeed, there must be something more than a retrospective finding by a jury that there was a simple violation of the statute.

The plaintiff contends that the willfulness finding in this case was permissible, notwithstanding *Trans World,* because Armfield, Jr. admitted that he knew that it was generally illegal to discharge employees because of their age and the company failed to take any affirmative steps to ensure compliance with the ADEA. Such steps apparently would include consulting an attorney before acting.

The admission establishes only that the employer was aware in general of the statutory prohibition. On the second point, in its formulation of a general policy, Trans World had consulted counsel, but it would be entirely unreasonable to require an employer to seek legal advice before taking any employment action adversely affecting an individual employee within the protected age group.

The finding of the jury that there was a violation of the statute does not obviate consideration of the defendant's business justification defense. *See McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 117 & n. 8 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). *But see Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1098–1100 (11th Cir.1987). One may accept the jury finding that the plaintiff's age was a factor in the decision to discharge him, but it is undisputed that, because of the plaintiff's high salary, his employment was a losing proposition for the defendant. Whether or not legal advice was sought, the employer ran the risk that a jury might find that plaintiff's age was a procuring cause of his discharge. There is no doubt, however, that the economics of the situation demanded that plaintiff be terminated or accept a drastic reduction in his compensation. There is simply no basis for a finding that the employer acted in bad faith or with knowledge that its action was so lacking in justification as to warrant a jury's characterization of its conduct as willful. It was

a thin case to begin with, too thin to support the finding of a willful violation of the statute.

## V.

The judgment of the district court is affirmed.

AFFIRMED.